# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

GREGORY ALLEN JOHNSON, :
AIS 147437,
 :
    Petitioner,
 :
vs.                                                                    CA 10-0123-WS-C
 :
DAVID WISE,

    Respondent.

## REPORT AND RECOMMENDATION

       Gregory Allen Johnson, a state prisoner presently in the custody of the respondent, filed a petition for habeas corpus relief on a form provided to persons in state custody, pursuant to 28 U.S.C. § 2254, but therein makes no mention of his state conviction. (*See* Doc. 1) Instead, the sole focus of Johnson's attack is the May 6, 2002 revocation of supervised release by this Court in CR No. 95-0216-CB and, more specifically, the impact of the detainer placed on petitioner by federal authorities. It is Johnson's position that he has completed his twenty-four (24) month "revoked" supervised release sentence and, therefore, the federal detainer should be removed so that he can enjoy certain state "benefits," such as educational courses and transfer to a lower-level custody facility. (*See id.,* Attachments) Petitioner claims that the presence of the federal detainer has twice placed him in jeopardy of life and limb (*id*. at 7 ("I was in federal custody first. The[re's] no law stating I must resolve any possible further charges

1

before my current sentence would begin. The state indicted me after my federal sentencing date ."); *see also id*. at 12 ("At my sentencing hearing, the court did not inform me, nor is there a law stating that I must resolve any further possible charges before my current sentence would begin. . . . Defendant is asserting a claim of Double Jeopardy and that he is being unlawfully detained by a probation violation detainer. Defendant further asserts that the twenty-four (24) month probationary sentence has been completed and there should be no detainer concerning this sentence which has already been served.")) and makes clear in his response and objection to the answer that he is proceeding in this case pursuant to 28 U.S.C. § 2241 (Doc. 10, at 1). Inasmuch, as indicated above, Johnson makes no attack on his September 16, 2003 life sentence imposed by the Circuit Court of Houston County, Alabama (*see* Doc. 1, at 11), § 2254 does not provide him the proper avenue for relief. Accordingly, the undersigned construes the present petition as having been filed pursuant to 28 U.S.C. § 2241.[1]

## FINDINGS OF FACT

1.  On January 17, 1996, Johnson entered a counseled guilty plea to burglary of a United States Post Office in this Court. *See United States v. Johnson*, CR No. 95-0216-CB, Docs. 16 & 30. Johnson was sentenced, on April 9, 1996, to thirty (30) months imprisonment and a three-year term of supervised release. *See id*. at Doc. 19. Johnson

---

[1]   The undersigned would note that Johnson attempted to levy the same attack he pursues in this case in his underlying criminal case, *United States v. Johnson*, CR No. 95-0216-CB, pursuant to 28 U.S.C. § 2255. *See id.*, Doc. 38. Petitioner's motion was denied as time-barred on June 9, 2008. *See id.*, Doc. 45. Having failed in his efforts to go through the front door and attack the federal detainer, Johnson is now attempting to attack same through the back door. The back door, however, provides Johnson with no better avenue for relief.

served his initial 30 month-term of imprisonment and was released on SRT. *Id.* at Doc. 45.

    2.    "On March 21, 2002, the United States Probation Office filed a violation petition alleging that '[a] warrant was issued on March 18, 2002, in Houston County, Alabama District Court charging Gregory Allen Johnson with Robbery 1st Degree,' and that petitioner had been arrested on March 18, 2002 and charged with reckless endangerment, resisting arrest and possession of drug paraphernalia." *Id.* at Doc. 45 (footnote omitted). At the time of the filing of the violation petition, Johnson was in state custody on the state charges and was transferred from state to federal custody for SRT revocation proceedings pursuant to a writ of habeas corpus ad prosequendum. *Id.* at Docs. 45 & 24. A revocation hearing was conducted on May 6, 2002;[2] this Court determined that petitioner had violated the terms of his supervised release, revoked his supervised release, and sentenced him to a 24-month term of imprisonment. *Id.* at Doc. 30. Judgment was actually entered on May 14, 2002 and Johnson was remanded to the custody of the United States Marshal.

    3.    The Circuit Court of Houston County, Alabama issued a warrant for Johnson's arrest, pursuant to a grand jury indictment for first-degree robbery, on June 13, 2002. *Id.* at Doc. 45; *see also Johnson v. Wise,* CA 10-0123-WS-C, Doc. 9, Exhibit C.[3]

---

[2] Petitioner admitted that he had been charged with the offenses of reckless endangerment, resisting arrest, and possession of drug paraphernalia; this Court found that he had also violated his SRT terms by being charged with first-degree robbery in the District Court of Houston County, Alabama. *See id.* at Doc. 30.

[3] Because the undersigned need refer, at this point in the opinion, both to the instant case and petitioner's underlying criminal case in this Court, full citation to this case is made rather

3

Johnson was arrested on this charge on June 16, 2002 at the Houston County Jail, the institution to which petitioner was returned by federal authorities following the revocation of his SRT. *Compare United States v. Johnson*, at Doc. 30 (reflecting Johnson's residence address and mailing address as the Houston County Jail in Dothan, Alabama) *and* Doc. 36 ("On May 6th 2002[,] in your presence in Mobile County Federal Court . . . I was sentenced to 24 months in Federal custody. ***Some few weeks later in Houston County***[,] I had to stand trial once again in state court[.]" (emphasis supplied)) *with Johnson v. Wise*, Doc. 1, WRIT OF ARREST (writ executed on June 16, 2002 and signed by Sheriff Lamar Glover, the Houston County Sheriff[4] and a deputy sheriff) *and id.,* Doc. 9, Exhibit C, Case Action Summary Sheet.

     4. Johnson entered a counseled guilty plea to first-degree robbery in the Circuit Court of Houston County, Alabama on September 16, 2003 and was sentenced to life imprisonment pursuant to Alabama's Habitual Felony Offender Act. *See Johnson v. Wise, supra*, Doc. 9, Exhibit C, Case Action Summary Sheet. Petitioner was given jail credit for one (1) year and 181 days. *Id.* Thus, Johnson was given credit for the time he was incarcerated from the moment he was arrested by Houston County authorities on March 18, 2002 to the date he was sentenced to life imprisonment on September 16, 2003. *See id.*

     5. Since shortly after his sentencing on September 16, 2003, Johnson has been incarcerated in the St. Clair Correctional Facility in Springville, Alabama, a state facility,

---

than a parenthetical citation to document number only.

[4]    *See Ex parte Houston County Sheriff Lamar Glover,* 801 So.2d 1 (Ala. 2001).

serving the life sentence imposed by the Circuit Court of Houston County, Alabama. *See id*.

6. On January 28, 2004, the United States Marshal for the Middle District of Alabama filed a detainer with the Alabama Department of Corrections notifying the state that Johnson was subject to a 24-month Bureau of Prisons ("BOP") term of imprisonment following completion of his state sentence. *Johnson v. Wise*, Doc. 9, Exhibit D. On March 10, 2005,[5] and again on September 7, 2006,[6] Johnson filed motions in his federal criminal case seeking to dismiss or lift the federal detainer; both motions were denied by this Court. *United States v. Johnson, supra*, Docs. 34-37.

7. On October 31, 2006, Johnson filed a petition for writ of habeas corpus in this Court, pursuant to 28 U.S.C. § 2254, claiming that he was being unlawfully detained in violation of the Double Jeopardy Clause. *See Johnson v. Hooks,* CA 06-0740-KD-B, Doc. 1.

8. On March 2, 2008, Johnson filed a motion to vacate in this Court pursuant to 28 U.S.C. § 2255. *United States v. Johnson, supra,* Doc. 38. This motion, which

---

[5] "My Inmate Summary Sheet shows that I have a Detainer concerning the Twenty Four (24) month[] [federal sentence]. With this Detainer, and the fact that I am serving a Life Sentence with NO guarantee of parole, or release, I am not elegiable (sic) for any kind of reduction of custody, or transfer[,] if either does become available. . . . I am requesting respectfully that this Honorable Court DISMISS the detainer on the fact that I am serving a Life Sentence with NO guarantee of parole or release from the State Department of Corrections. Furthermore, it would at least allow me the chance to obtain a reduction of custody or maybe a transfer from a Maximum Security Institution if such ever does become available in the future." Doc. 34 in *United States v. Johnson, supra*.

[6] "This detainer is preventing me from going to work release, honor camps, or any other lower custody camps. . . . I am corresponding with you in hopes of obtaining an order to have this detainer lifted so that I may reach [a] lower custody facility." Doc. 36 in *United States v. Johnson, supra.*

attacks the federal detainer like the instant petition, *see id*., Doc. 45, at 3 ("As a remedy, petitioner seeks either to have his sentence vacated, to have his probation (*i.e.,* supervised release) reinstated, to be given 19½ months credit toward his federal sentence for time served or to have the federal sentence run concurrently with his state sentence."), was dismissed with prejudice, on June 9, 2008, as time-barred, *id*. at 4.

9. United States Magistrate Judge Sonja F. Bivins recommended that Johnson's October 31, 2006 petition be dismissed without prejudice for lack of subject matter jurisdiction due to his failure to exhaust his administrative remedies. *Johnson v. Hooks, supra*, Doc. 21. Judge Bivins treated Johnson's petition as a § 2241 petition, as opposed to a § 2254 petition, finding that he was seeking "credit on a federal sentence for time already served[.]" *Id*. at 1. The report and recommendation of the Magistrate Judge was adopted as the opinion of this Court on June 4, 2009. *Johnson v. Hooks, supra*, Docs. 22-23.

10. Shortly after entry of this Court's June 4, 2009 judgment in *Johnson v. Hooks*, Johnson began requesting grievance forms from the Bureau of Prisons. *See Johnson v. Wise*, Doc. 1, Letters/Notices of July 20, 2009, August 28, 2009, October 15, 2009, November 2, 2009, and December 30, 2009. Johnson heard back from the Bureau of Prisons only after sending them his July 20, 2009 letter requesting a Level 1 Grievance Form. *See id*., Letter of July 20, 2009. Public Information Officer Chalon Moore, by return letter dated August 20, 2009, sent Johnson the following response:

> We are in receipt of your letter in which you are requesting to receive a grievance form so that you can attempt to have a federal detainer removed from your time sheet.

The formal inmate grievance review procedure utilized by the Federal Bureau of Prisons (BOP) is the Administrative Remedy Program. ***This program applies to all inmates in institutions operated by the BOP, to inmates designated to contract Residential Reentry Centers (RRCs) under BOP responsibility, and to former inmates for issues that arose during their confinement. This Program does not apply to inmates confined in other non-federal facilities.***

Based upon the limited information available in your letter, it appears that you are not eligible to utilize the Administrative Remedy Program. You did not provide sufficient information for any additional guidance in this matter.

*Id.,* BOP Letter of August 20, 2009 (emphasis supplied).

11. Receiving no favorable response from the BOP, Johnson filed the present action in this Court on March 11, 2010. (Doc. 1) Johnson's sworn affidavit, which is attached to his petition, reads, in part, as follows: "I have made full attempt to obtain and file a 4 level Administrative Procedure Grievance. I have been denied at all attempts to obtain the proper forms from the Federal Bureau of Prisons. I have received no further response from the BOP pertaining to this matter. I now ask the court to recognize my attempt to rectify this matter through the proper 4 level Grievance Procedure and that I have exhausted all of my administrative remedies related to my claim that I am entitled to credit on my Federal sentence for the time served in state custody." (*Id.*, Sworn Affidavit) As previously indicated, petitioner's sole claim is that he has twice been placed in jeopardy of life and limb and this contention is based upon his insistence, albeit inaccurate, that he is entitled to credit on his federal sentence for the time he has spent in state custody serving his state sentence. (*See* Doc. 1) It is clear from the letters attached to this his most recent habeas petition that Johnson wants to be rid of the federal detainer

because it is adversely impacting his ability to be transferred to a lower-level custody facility and to participate in educational programs, etc. (*See* Letters Attached to Doc. 1)

## **CONCLUSIONS OF LAW**

1.   While "[a] challenge to a federal sentence as imposed must be made under 28 U.S.C. § 2255 and filed with the federal district court that convicted and sentenced the petitioner[,] . . . where the petitioner is challenging the BOP's execution of his federal sentence, the habeas petition is properly brought under 28 U.S.C. § 2241." *Rashid v. Quintana*, 2009 WL 3271214, *4 (W.D. Pa. 2009) (citation omitted), *order aff'd*, 2010 WL 1141386 (3rd Cir. 2010). "A petition for writ of *habeas corpus* under 28 U.S.C. § 2241 is the correct mechanism for challenging the manner in which a sentence is executed." *White v. Young*, 2010 WL 686397, *4 (W.D. La. 2010); *see Coady v. Vaughn*, 251 F.3d 480, 485 (3rd Cir. 2001) ("Section 2241 is the only statute that confers habeas jurisdiction to hear the petition of a federal prisoner who is challenging not the validity but the execution of his sentence."). Johnson contends here, of course, that he is challenging the "execution" of his federal sentence-more specifically, he is seeking release of the federal detainer placed against him-pursuant to § 2241. Although the issue does not appear to be as clear cut as petitioner would have this Court believe, since Johnson has not commenced his federal sentence, for purposes of this report and recommendation the undersigned will regard § 2241 as the proper procedural mechanism for consideration of this case. *See DeVivo v. Mance*, 2009 WL 2882937, *5 (N.D. N.Y.) ("After reviewing the relevant case law, we are satisfied that § 2241 is the proper vehicle

8

by which DeVivo may assert his claim for sentencing credit since such a claim has been construed as one challenging the 'execution of [a] sentence rather than to the validity of a sentence.'"), *report and recommendation adopted sub nom. DeVivo v. United States Probation Office*, 2009 WL 2914063 (2009).

      2.      When a district court has imposed a federal criminal sentence, "the United States Attorney General, through the BOP as that official's delegate, is responsible for calculating the inmate's term of confinement, including determination of when the sentence commences and the appropriate credit to be granted for jail time served before commencement of the federal sentence." *Sanders v. Federal Bureau of Prisons*, 2009 WL 1917093, *2 (W.D. Va.) (citing *United States v. Wilson,* 503 U.S. 329, 334, 112 S.Ct. 1351, 117 L.Ed.2d 593 (1992)), *aff'd sub nom. Sanders v. O'Brien*, 333 Fed.Appx. 791 (4th Cir. 2009), *cert. denied*, __ U.S. __, 130 S.Ct. 2122, 176 L.Ed.2d 745 (2010); *see also Dais v. LaManna*, 2006 WL 2642604, *4 (D. S.C. 2006) ("The execution of sentences and the computation of jail time is an administrative function under the authority of the Office of the Attorney General, which has delegated this task to the FBOP. The delegation of tasks includes responsibility for computing time credits and determining a sentence termination date once the defendant actually commences serving his sentence."), *aff'd*, 224 Fed.Appx. 292 (4th Cir. 2007). The general rule is that "a federal sentence begins when the defendant is 'received for transportation to or arrives at "the official detention facility at which the sentence is to be served."'" *Kennedy v. Terrell*, 2010 WL 2130976, *4 (D. Minn.) (citations omitted), *report and recommendation adopted*, 2010 WL 2130995 (2010); *see also* 18 U.S.C. § 3585(a) ("A sentence to a term of

imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served."). Because, as will be set out more fully *infra*, Johnson has not yet begun his 24-month federal sentence, the BOP has obviously not made any jail-time credit computations and, therefore, properly spurned Johnson's attempts to exhaust his administrative remedies. *Compare DeVivo, supra,* at *6 ("Because it is the BOP who decides what credit a federal prisoner will receive, and ***such computation is made at the time an inmate arrives at his designated federal facility***, it has been held that a prisoner ***must first pursue and exhaust available administrative remedies***, prior to seeking collateral relief in district court." (emphasis supplied)) *and Jimenez v. Warden, FDIC, Fort Devens, Massachusetts,* 147 F.Supp.2d 24, 27 (D. Mass. 2001) ("The Attorney General, through the BOP, computes the appropriate amount of credit to be allowed under § 3585(b) ***after a defendant has begun to serve his sentence***. If a federal prisoner contends that the BOP failed to grant proper credit under § 3585(b) for time spent in the custody of another sovereign in connection with the offense for which the federal sentence was imposed, he must first make that claim to the Attorney General through the BOP after sentencing. Once administrative remedies have been exhausted, *see* 28 C.F.R. §§ 542.10-542.16, judicial review may be obtained by the filing of a habeas corpus petition under 28 U.S.C. § 2241 challenging the execution of the sentence by the BOP." (some internal citations omitted; emphasis supplied)) *with Dais, supra*, at *4 ("The grievance procedure set forth in the BOP regulations is a three-tiered process whereby an inmate may seek redress for the alleged deprivation of any right. *See*

28 C.F.R. § 542.10. The first step of the process involves the inmate and the staff member engaging in an informal resolution process. 28 C.F.R. § 542.13(a). If informal resolution of the complaint is not successful, the inmate may file a formal written complaint with the Warden within twenty (20) calendar days from the date of the events that allegedly give rise to the complaint. 28 C.F.R. § 542.14(a). If the Warden responds in a manner unsatisfactory to the inmate, an appeal may be taken to the BOP Regional Director, within twenty (20) calendar days of the date that the Warden signed the response. Thereafter, should the Regional Director's response prove unsatisfactory to the inmate, an appeal may be taken to the General Counsel, within thirty (30) calendar days of the date the Regional Director signed the response. 28 C.F.R. § 541.15(a). . . . The execution of sentences and the computation of jail time is an administrative function under the authority of the Office of the Attorney General, which has delegated this task to the FBOP. This delegation of tasks includes responsibility for computing time credits and determining a sentence termination date *once the defendant actually commences serving his sentence*." (emphasis supplied)). In other words, Johnson is entitled to exhaust his administrative remedies only once he actually commences his federal sentence and since his federal sentence has not yet commenced he will only be able to properly exhaust those remedies when he commences his federal sentence. Thus, the BOP properly responded to Johnson in its letter of August 20, 2009 and, thereafter, properly ignored Johnson's further inquiries. Furthermore, Johnson cannot establish that he has exhausted his administrative remedies or that exhaustion of same would be futile since the ability to exhaust those remedies has not yet accrued to him and will not accrue to him until he

actually commences his federal sentence.[7]

    3.    "When an inmate has sentences imposed by federal and state authorities, as a matter of comity, ***the sovereign that arrested him first acquires and maintains primary jurisdiction over him until the sentence imposed by that sovereign has been satisfied***." *Sanders, supra*, at *3 (citations omitted; emphasis supplied). Stated differently, "'the first sovereign to arrest an offender has priority of jurisdiction over him for trial, sentencing, and incarceration,' and that primary 'jurisdiction continues until the first sovereign relinquishes its priority by, for example, bail release, dismissal of the state charges, parole release, or expiration of the sentence.'" *Id*. (citation omitted). In this case, there can be no doubt but that state authorities in Houston County first arrested Johnson on March 18, 2002 on charges of reckless endangerment, resisting arrest, and possession of drug paraphernalia following issuance of a district court warrant charging him with first-degree robbery. Petitioner remained in the Houston County Jail on these charges until being transferred to this Court pursuant to a writ of habeas corpus *ad prosequendum* for SRT revocation proceedings. It is clear that this writ did not change Johnson's primary jurisdiction status, *see, e.g., Thomas v. Whalen*, 962 F.2d 358, 361 n.3 (4th Cir. 1992) ("A prisoner is not even in custody for purposes of section 3568 when he appears in federal court pursuant to a writ *ad prosequendum*; he is merely 'on loan' to federal

---

[7] It is because Johnson has not yet commenced his federal sentence that the undersigned questions the propriety of allowing petitioner to pursue this case in federal court via 28 U.S.C. § 2241. In other words, while § 2241 will perhaps be the proper vehicle for Johnson to challenge execution of his federal sentence in the future, such challenge is not allowable until petitioner begins his federal sentence. Thus, petitioner's § 2241 attack is premature. Nonetheless, the undersigned continues his analysis since all of petitioner's claims are specious.

12

authorities."); instead, "[a] writ of habeas corpus ad prosequendum specifically recognizes the state's primary jurisdiction, the intention of the federal authorities to 'borrow' the defendant for court proceedings, and their obligation to return the defendant to state custody[.]" *Sanders, supra,* at *3 (citation omitted). That Johnson was only "borrowed" from Houston County authorities and remained in the primary custody of state authorities is evidenced by the fact that petitioner was returned to Houston County soon after his SRT was revoked by this Court (and he was sentenced to a 24-month term of imprisonment) as well as by the action of state authorities in according Johnson some 1 year and 181 days of jail credit upon being sentenced to life imprisonment for first-degree robbery on September 16, 2003.[8] Petitioner's argument that he was sentenced in federal court first and started serving his federal sentence at that moment fails because, as aforesaid, state authorities never relinquished primary jurisdiction over Johnson and gave petitioner jail credit for all the time he spent in prison from the moment of arrest to the moment of sentencing on September 16, 2003. If this Court was to "buy in" to Johnson's argument, and find that he should also be given jail credit on his federal sentence for the time spent in state custody,[9] the provisions of 18 U.S.C. § 3585(b) effectively would be eviscerated. "Prisoners who are in state custody and are removed on a federal writ of habeas corpus ad prosequendum are not entitled to credit on a subsequent federal

---

[8] As previously indicated, this jail credit accounts for the entire time Johnson was imprisoned from the date he was arrested on March 18, 2002, until the date he was sentenced by the Houston County Circuit Court on September 16, 2003.

[9] *See White v. Young*, *supra*, at *5 ("[P]etitioner is not entitled to credit on his federal sentence for time served in state custody.").

sentence for the days detained in federal custody on the writ when they received the credit towards their state sentence. . . . Permitting a prisoner to receive double credit for time served would violate 18 U.S.C. § 3585(b)." *Withers v. Drew*, 2010 WL 670101, *5-6 (D. S.C. 2010) (citations omitted); *see also Sanders, supra*, at *3 ("[A] defendant is not entitled to credit against a federal criminal sentence for any period of time served in 'official detention' prior to the 'date the sentence commences' if that time has been credited against another sentence.").[10]

4. Because the State of Alabama has primary custody over Johnson, his 24-month federal sentence will commence "'only when the state authorities relinquish [him] on satisfaction of the state obligation.'" *Sanders, supra,* at *3, quoting *United States v. Evans*, 159 F.3d 908, 912 (4th Cir. 1998); *see also Wright v. Hogsten*, 2010 WL 1995011, *4 (E.D. Ky. 2010) ("Under § 3585(a), Wright's federal sentence could not begin until his commitment to federal prison for service of that sentence: in this case, December 6, 2005. . . . Case law establishes that actual federal custody commences only when the state authorities relinquish the prisoner upon satisfaction of his obligation to the State, not because of an interim writ."); *United States v. Booker*, 2006 WL 287860, *1 (N.D. Fla. 2006) ("[F]ederal custody commences only when the state authorities relinquish the prisoner on satisfaction of the state obligation."); *cf. United States v. LaBeille-Soto,* 163 F.3d 93, 98 (2nd Cir. 1998) ("[T]he determination of the precise date on which a sentence begins appears to have been intended to be a ministerial decision

---

[10] The federal detainer issued in 2004 did not change petitioner's state custody status. *See Thomas, supra,* 962 F.2d at 360 ("A detainer neither effects a transfer of a prisoner from state to federal custody nor transforms state custody into federal custody by operation of law.").

14

that depends on the timing of the defendant's arrival at the appropriate place with respect to the sentence that is to be served, and we have held that '[a]fter a defendant is sentenced, it falls to [the] BOP, not the district judge, to determine when a sentence is deemed to 'commence[.]'"). As previously indicated, until such time as his federal sentence commences, Johnson can neither exhaust his administrative remedies or properly challenge, through § 2241, the manner in which his federal sentence is executed. What is clear at present is that because Johnson has never been in primary federal custody, he is not entitled to any period of time he has served since March 18, 2002, the date of his arrest, as prior custody credit toward his federal sentence.

5. Based on the foregoing discussion, petitioner can assert no argument that he has twice been placed in jeopardy of life and limb. More to the point, the Double Jeopardy Clause merely prohibits multiple punishments for the same offense, *see, e.g., North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969), and since petitioner was sentenced by state authorities for first-degree robbery and by this Court for violating the conditions of his supervised release on an underlying postal burglary conviction, his Double Jeopardy argument fails. In other words, since Johnson has not been subjected to multiple punishments for the same offense, he has not been subjected to a violation of the Double Jeopardy Clause. Accordingly, petitioner is not entitled to relief on the basis of this claim.

6. Finally, but perhaps most importantly, it is clear to the undersigned that the mere fact that a detainer has adverse consequences upon a prisoner's eligibility for rehabilitative/institutional programs and prison classification does not implicate due

process concerns. *Moody v. Daggett*, 429 U.S. 78, 88 n.9, 97 S.Ct. 274, 279 n.9, 50 L.Ed.2d 236 (1976) ("Petitioner also argues that the pending warrant and detainer adversely affect his prison classification and qualification for institutional programs. We have rejected the notion that every state action carrying adverse consequences for prison inmates automatically activates a due process right. In *Meachum v. Fano,* 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d [451] (1976), for example, no due process protections were required upon the discretionary transfer of state prisoners to a substantially less agreeable prison, even where that transfer visited a 'grievous loss' upon the inmate. The same is true of prisoner classification and eligibility for rehabilitative programs in the federal system."); *see also Lovingood v. Bureau of Prisons,* 2007 WL 4374049, *2 (E.D. Ky. 2007) (" Petitioner [] asserts that the federal detainer lodged with state authorities should be released because it is adversely affecting his eligibility to participate in rehabilitative programs in state prison, and because he will have served out his 15-year federal sentence long before his 81-year state sentence[] has been served. Lovingood cites no authority in support of his position, nor is the Court aware of any. To the contrary, it is well established that the mere fact that a detainer has adverse consequences upon a prisoner's living conditions or eligibility for rehabilitation programs at his current facility does not implicate due process concerns."); *Hamrick v. Patton*, 2006 WL 2092392, *2 (E.D. Ky. 2006) ("Petitioner is further advised that to the extent he alleges that the pending detainer adversely affects his prison classification and qualification for institutional programs, such as the RDAP, his claim would suffer on the merits. Courts have rejected the notion that every state action carrying adverse consequences for prison inmates automatically

activates a due process right."). Therefore, to the extent Johnson contends that the federal detainer lodged with state authorities should be released because it is adversely impacting his prison classification and his ability to participate in institutional/rehabilitative programs, *compare Johnson v. Wise, supra*, August 28, 2009 Letter Attached to Doc. 1 ("[M]y federal time has expired which makes this federal detainer obsolete and of no purpose. This detainer is prejudicing me from obtaining the benefits entitled to me under the Dept. of Correction Ala. [s]tate prison such as pre-release status, educational and social development courses and programs and the right to be transferred to a lower level custody facility.") *with United States v. Johnson, supra*, Doc. 36 ("I am corresponding with you in hopes of obtaining an order to have this detainer lifted so that I may reach lower custody facility."), this contention is due to be rejected inasmuch as such collateral consequences do not "rise to the level of a constitutional deprivation for which habeas relief can be granted." *Barth v. Warden, FCI Fort Dix*, 2009 WL 2634656, *3 (D. N.J. 2009).

7. Pursuant to Rule 11(a) of the Rules Governing § 2254 Cases, the undersigned recommends that a certificate of appealability in this case be denied. 28 U.S.C. foll. § 2254, Rule 11(a) ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.").[11] The habeas corpus

---

[11] "Based on the statutory language of 28 U.S.C. § 2253(c)(1), state prisoners proceeding under § 2241 must obtain a COA to appeal." *Sawyer v. Holder*, 326 F.3d 1363, 1364 n.4 (11th Cir.), *cert. denied*, 540 U.S. 900, 124 S.Ct. 258, 157 L.Ed.2d 181 (2003); *see also Hoard v. State of Michigan*, 2005 WL 2291000, *3 (E.D. Mich. 2005) ("Whether petitioner's habeas corpus petition was brought under § 2254 or brought under § 2241, he must obtain a certificate of appealability before appealing this Court's denial of his habeas petition.").

statute makes clear that an applicant is entitled to appeal a district court's denial of his habeas corpus petition only where a circuit justice or judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1). A certificate of appealability may issue only where "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2243(c)(2). Where, as here, a habeas petition is being denied on the merits of underlying constitutional claims, a COA should issue only when the petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong[,]" *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S.Ct. 1595, 1604, 146 L.Ed.2d 542 (2000); *see also id.* at 483-484, 120 S.Ct. at 1603-1604 ("To obtain a COA under § 2253(c), a habeas prisoner must make a substantial showing of the denial of a constitutional right, a demonstration that, under *Barefoot*, includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were '"adequate to deserve encouragement to proceed further."'"); *see Miller-El v. Cockrell*, 537 U.S. 322, 336, 123 S.Ct. 1029, 1039, 154 L.Ed.2d 931 (2003) ("Under the controlling standard, a petitioner must 'sho[w] that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were "adequate to deserve encouragement to proceed further."'"). The undersigned recommends that the Court find that reasonable jurists could not debate whether Johnson's § 2254 petition, construed as a § 2241 petition, should be resolved in a different manner or that any of the issues presented are adequate to deserve encouragement to proceed further. Accordingly, petitioner is not

18

entitled to a certificate of appealability.

## **CONCLUSION**

The Magistrate Judge is of the opinion that petitioner's rights are not being violated in this cause and that his § 2254 petition, construed as a § 2241 petition, be **DISMISSED WITH PREJUDICE**. Petitioner is not entitled to a certificate of appealability and, therefore, he is not entitled to appeal in forma pauperis.

The instructions which follow the undersigned's signature contain important information regarding objections to the report and recommendation of the Magistrate Judge.

**DONE** and **ORDERED** this the 13th day of July, 2010.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**

# MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND FINDINGS CONCERNING NEED FOR TRANSCRIPT

l.      *Objection*.  Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this court.  Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge. *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*).  The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a 'Statement of Objection to Magistrate Judge's Recommendation' within ten days[12] after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.      *Transcript (applicable Where Proceedings Tape Recorded)*.  Pursuant to 28 U.S.C. § 1915 and FED.R.CIV.P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

---

[12]     Effective December 1, 2009, the time for filing written objections was extended to "14 days after being served with a copy of the recommended disposition[.]" Fed.R.Civ.P. 72(b)(2).